UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.  8:19-CR-398-T-33SPF

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

MARIA BASSI LAURO,

     Defendant.

_____/

## MOTION TO SUPPRESS SEARCH WARRANT AND EVIDENCE AND MEMORANDUM OF LAW

COMES NOW the Defendant, MARIA BASSI LAURO, (hereinafter "LAURO"), by and through undersigned counsel, Patrick R. McKamey, Esq., pursuant to Rule 12 of the Federal Rules of Criminal Procedure, and moves this Honorable Court for an order suppressing the items seized pursuant to the Search and Seizure Warrant that was issued on April 30, 2019, on the basis that the search and seizure warrant lacked probable cause.  This motion is made on the following grounds:

### RELEVANT FACTS

1.      On April 30, 2019, the Magistrate Judge, Christopher P. Tuite, executed a search warrant authorizing the police to take a saliva sample from the mouth of MARIA BASSI LAURO.  The warrant specified that "[t]he saliva sample will be collected using a Sterile Cotton Tipped Applicator or a Federal Convicted Offender Collection Kit, the tip of which will be placed in LAURO'S mouth and run along the gum line and under the tongue, so as to collect as

much saliva as necessary."

2.      Said investigation was as a result of several administrators from several different elementary schools, all situated in the Middle District of Florida, receiving an envelope containing a letter and an unknown "white powder".

3.      Said search warrant was issued as a result of Special Agent, Timothy D. Taylor from the Federal Bureau of Investigation, filing an application for a search warrant on April 30, 2019. The basis for the search warrant was to obtain evidence of a crime pursuant to Fed.R.Crim.P. §41(c).

4.      Special Agent Taylor stated in his "affidavit in support of search warrant" that "[t]he facts contained in this affidavit are either personally known, have been told to me by the other law enforcement officers and witnesses, or a based upon my review of the evidence and records obtained during this investigation."

5.      In the section marked "probable cause", Special Agent Taylor states that his information in support of his application for the search warrant seeking a saliva sample from LAURO was based on statements made by the Citrus Ridge Administrator "that she believed that LAURO was responsible for sending the above-described letter and white powder."

6.      Based on the administrator's statement, Special Agent Taylor then spoke with the other witnesses who identified various other individuals whom they thought could have sent the letters.

7.      The search and seizure warrant was to be executed on or before May 12, 2019.

8.      On September 5, 2019,  a federal grand jury issued a six count Indictment charging LAURO with knowingly depositing in an authorized depository for mail matter, to be sent and delivered by the Postal Service, and caused to be delivered by the Postal Service

according to the directions there, a communication addressed to an employee at Citrus Ridge
Academy containing a threat to injure the addressee and the person of another, with the intent to
communicate a true threat and with the knowledge that the communication would be viewed as a
true threat in violation of 18 U.S.C. §876(c) (Count 1);  did engage in conduct with the intent to
convey false and misleading information under circumstances where such information may
reasonably have been believed, and that indicated that an activity had taken, was taking, and
would take place that would constitute a violation of  18 U.S.C. §2332a(a)(2)(A), that is LAURO
mailed an envelope addressed to an employee of Citrus Ridge Academy containing a powdery
substance with the intent to convey false and misleading information that may reasonably have
been believed to indicate that LAURO had used, was using, and threatened to use, any weapon
involving a biological agent and toxin in violation of 18 U.S.C. §1038(a)(1) and 18 U.S.C.
§1038(a)(1)(A) (Count 2); with knowingly depositing in an authorized depository for mail
matter, to be sent and delivered by the Postal Service, and caused to be delivered by the Postal
Service according to the directions there, a communication addressed to an employee at
Groveland Elementary School containing a threat to injure the addressee and the person of
another, with the intent to communicate a true threat and with the knowledge that the
communication would be viewed as a true threat in violation of 18 U.S.C. §876(c) (Count 3); did
engage in conduct with the intent to convey false and misleading information under
circumstances where such information may reasonably have been believed, and that indicated
that an activity had taken, was taking, and would take place that would constitute a violation of
18 U.S.C. §2332a(a)(2)(A), that is LAURO mailed an envelope addressed to an employee of
Groveland Elementary School containing a powdery substance with the intent to convey false
and misleading information that may reasonably have been believed to indicate that LAURO had

3

used, was using, and threatened to use, any weapon involving a biological agent and toxin in violation of 18 U.S.C. §1038(a)(1) and 18 U.S.C. §1038(a)(1)(A) (Count 4); with knowingly depositing in an authorized depository for mail matter, to be sent and delivered by the Postal Service, and caused to be delivered by the Postal Service according to the directions there, a communication addressed to an employee at  Four Corners Charter School containing a threat to injure the addressee and the person of another, with the intent to communicate a true threat and with the knowledge that the communication would be viewed as a true threat in violation of 18 U.S.C. §876(c) (Count 5); did engage in conduct with the intent to convey false and misleading information under circumstances where such information may reasonably have been believed, and that indicated that an activity had taken, was taking, and would take place that would constitute a violation of  18 U.S.C. §2332a(a)(2)(A), that is LAURO mailed an envelope addressed to an employee of  Four Corners Charter School containing a powdery substance with the intent to convey false and misleading information that may reasonably have been believed to indicate that LAURO had used, was using, and threatened to use, any weapon involving a biological agent and toxin in violation of 18 U.S.C. §1038(a)(1) and 18 U.S.C. §1038(a)(1)(A) (Count 6) (DE:1).

## **MEMORANDUM OF LAW**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  "[A] warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity". *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011).  Probable cause should be determined upon a common sense assessment of the totality of the circumstances. *See Illinois v. Gates,* 462 U.S.

213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

      *A.      There Was No Probable Cause For The Issuance Of The Warrant*

      Using a buccal swab inside a person's cheek to obtain a DNA sample is a search under the Fourth Amendment. *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 652, 115 S.Ct. 2386. It can be agreed that using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples constitutes a search. Virtually any "intrusio[n] into the human body," will work as an invasion of 'cherished personal security' that is subject to constitutional scrutiny," *Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826 (1966), *Cupp v. Murphy,* 412 U.S. 291, 295, 93 S.Ct. 2000, (1973) (quoting *Terry v. Ohio,* 392 U.S. 1, 24–25, 88 S.Ct. 1868, (1968)).

      Although the taking of blood samples or other bodily intrusions may constitute a search within the scope of the Fourth Amendment, the Courts have established a special needs exception.  In *Shelton v. Gudmanson,* 934 F.Supp. 1048 (W.D.Wis.1996),  the Court summarized the "special needs" line of cases that permit warrantless searches without individualized suspicion in a DNA collection case: "[l]ike administrative searches, in which the warrant and probable cause showing are replaced by the requirement of showing a neutral plan for execution, a compelling governmental need, the absence of less restrictive alternatives and reduced privacy rights, *see Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727 (1967), special needs searches adopt a balancing of interests approach. . . . In determining the reasonableness of these searches, the Supreme Court has considered the governmental interest involved, the nature of the intrusion, the privacy expectations of the object of the search and, to some extent, the manner in which the search is carried out." *Shelton v. Gudmanson,* 934 F.Supp. at 1050-1051.

      As is clear from the text of the Fourth Amendment, probable cause must exist for a search warrant to issue. The Supreme Court defines "probable cause" as a "fair probability that

contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317 (1983). The determination of whether probable cause exists must be made in light of the "totality of the circumstances." *Id.* The ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 652, 115 S.Ct. 2386 (1995). In giving content to the inquiry whether an intrusion is reasonable, the Court has preferred "some quantum of individualized suspicion ... [as] a prerequisite to a constitutional search or seizure." *United States v. Martinez–Fuerte,* 428 U.S. 543, 560–561, 96 S.Ct. 3074 (1976).

The Court's inquiry is limited to "the four corners of the affidavit" and it must determine whether, "based on the totality of the circumstances and common-sense assessment, probable cause is shown." *Illinois v. Gates,* 462 U.S. 213 (1983) (probable cause to issue a search warrant is based on the totality of the circumstances).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "It is by now axiomatic that a court must examine the totality of the circumstances in order to determine whether a search or seizure is reasonable under the Fourth Amendment." *United States v. Lewis,* 674 F.3d 1298, 1303 (11th Cir.2012) (citing *Samson v. California,* 547 U.S. 843, 848, 126 S.Ct. 2193 (2006)). According to the Supreme Court, reasonable suspicion requires "some minimal level of objective justification" that is something more than an "inchoate and unparticularized suspicion or hunch." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581 (1989). In the instant case, the warrant was issued based on the "beliefs" of law enforcement, i.e., the handwriting looks the same (although stating he had no training in handwriting analysis) and statements by alleged witnesses who "believed" it was LAURO that possibly sent the letters.  As

stated in *Gates,* wholly conclusory statements fail to meet the probable cause requirement; the reviewing magistrate cannot abdicate his or her duty and become a mere ratifier of the bare conclusions of others. *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. And, pursuant to *Gates,* this Court is required to ensure that a substantial basis existed to support the magistrate's probable cause determination.  *Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317.

The affidavit in the warrant application must satisfy two elements: first, that a particular person has committed a crime—the commission element, and, second, that evidence relevant to the probable criminality is likely located at the place to be searched—the nexus element. *United States v. Vigeant,* 176 F.3d 565, 569 (1st Cir.1999). In the instant case, the affidavit does not satisfy these two elements.

The affidavit and therefore, the warrant is similar to the affidavit in the case of *Howard v. State,* 483 So.2d 844 (Fla. 1st DCA 1986).  In *Howard,* the affidavit contained a factual predicate indicating the presence of marijuana in appellant's greenhouse. But an assertion that marijuana has been observed growing immediately outside a dwelling was found to be insufficient in itself to support a warrant for a search of the dwelling. *Howard v. State,* 483 So.2d 844 (Fla. 1st DCA 1986).  The Court went on to state that the only further allegation involving the dwelling was that one of the informants had seen appellant "removing something for [sic] the greenhouse and taking it inside the trailer." The affidavit does not suggest what this "something" was, and there is no indication that only contraband was contained in the greenhouse. As such, the affidavit was found to be insufficient to support a warrant for a search of the trailer.

In the case at hand, this Court must find that the affidavit issued was insufficient to support the issuance of a warrant authorizing the police to take a saliva sample from the mouth of MARIA BASSI LAURO.  The warrant specified that "[t]he saliva sample will be collected

using a Sterile Cotton Tipped Applicator or a Federal Convicted Offender Collection Kit, the tip of which will be placed in LAURO'S mouth and run along the gum line and under the tongue, so as to collect as much saliva as necessary."

Said investigation was as a result of several administrators from several different elementary schools, all situated in the Middle District of Florida receiving an envelope with a letter and an unknown "white powder". Said search warrant was issued as a result of Special Agent, Timothy D. Taylor from the Federal Bureau of Investigation filing an application for a search warrant on April 30, 2019. The basis for the search warrant was to obtain evidence of a crime pursuant to Fed.R.Crim.P. §41(c).

Special Agent Taylor stated in his "affidavit in support of search warrant" that "[t]he facts contained in this affidavit are either personally known, have been told to me by the other law enforcement officers and witnesses, or a based upon my review of the evidence and records obtained during this investigation." In the section marked "probable cause" Special Agent Taylor states that his information in support of his application for the search warrant seeking a saliva sample from LAURO was based on statements made by the Citrus Ridge Administrator "that she **believed** that LAURO was responsible for sending the above-described letter and white powder."

In deciding whether to grant or deny LAURO'S Motion to Suppress, the District Court must consider the "totality-of-the-circumstances". When you consider the "totality-of-the-circumstances, it is hard to ascertain how a search warrant could be issued merely because the Citrus Ridge Administrator stated that "that she believed that LAURO was responsible for sending the above-described letter and white powder." How does that statement, without any further evidence but summations and "guesses" leads one to believe there is a "fair probability

that contraband or evidence of a crime will be found. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317 (1983).    A sworn statement of an affiant that "[t]he facts contained in this affidavit are either personally known, have been told to me by the other law enforcement officers and witnesses, or are based upon my review of the evidence and records obtained during this investigation," is not sufficient to support probable cause. *Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11 (1933).    An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and an officer's statement that "[t]he facts contained in this affidavit are either personally known, have been told to me by the other law enforcement officers and witnesses, or a based upon my review of the evidence and records obtained during this investigation." is inadequate. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509 (1964).    The mere fact that LAURO may have taught at the schools in question may have given the government a window; but what the government is doing is taking that "window" and using it to obtain a search warrant, and then creating a door to walk through – all without considering LAURO'S constitutional rights.

The Fourth Amendment asserts the right of the people to be secure from "unreasonable searches and seizures" and requires that no warrant issue but upon probable cause "and particularly describing the place to be searched, and the persons or things to be seized."    Again, in order for this Court to find there was probable cause for the warrant to be issued, there had to be sufficient facts and information to determine probable cause.  In order to ensure that there is probable cause, the Courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.  Accordingly, in reviewing the application and affidavit for the search warrant in this case, it is clear that there was no proper probable cause- only a suspicion or hunch that may or may not have been accurate.  Based on this alone, LAURO'S Motion must

be granted.

Again, to determine whether probable cause existed, the judge issuing the warrant has to "make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit,' there [was] a fair probability that evidence of a crime [would] be found in a particular place." *United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987).   Therefore, "given all the circumstances", there was insufficient information to support a finding that LAURO sent the letters and accordingly, there was no basis for concluding that there was probable cause for the issuance of a warrant authorizing the collection of LAURO'S saliva to determine if in fact she was the one who sent the letters in question. *See Gates,* 462 U.S. at 238–39.   Accordingly, LAURO'S Motion to Suppress must be granted.

**B.      Any Evidence Found As A Result Of The Illegal Search Warrant Being Issued Is "Fruit Of The Poisonous Tree" And Must Be Suppressed.**

The exclusionary rule, which provides that evidence seized as the result of a search violative of the Fourth Amendment may not be used by the Government in a subsequent criminal prosecution, is " 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " *United States v. Martin,* 297 F.3d 1308, 1312 (11th Cir.2002) (quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613 (1974)). Because, the sample of LAURO'S saliva was obtained in violation of her Fourth Amendment rights, said evidence must be excluded and therefore, LAURO'S Motion to Suppress must be granted.

Furthermore, due to the fact that the evidence that was attained in violation of her constitutional rights, any subsequent evidence seized is "fruit of the poisonous tree" and must be suppressed as well.  The government bears the burden of demonstrating that evidence "was not obtained as a direct result of the illegal search."  *United States v. Crosby,* 739 F.2d 1542, 1549

(11th Cir.1984). "The relevant inquiry examines the extent of the causal connection between the lawless police conduct and the evidence in question; i.e., 'whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *United States v. Bailey,* 691 F.2d 1009, 1013 (11th Cir.1982) (quoting *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417 (1963)).   Therefore, LAURO'S Motion to Suppress must be granted in order to assure her due process rights are protected.

CONCLUSION

WHEREFORE, undersigned counsel would respectfully request this Honorable Court to grant LAURO'S motion to suppress for all of the reasons argued herein.  The government has failed to establish probable cause for the search warrant and the seizure of the saliva sample from LAURO.

Respectfully submitted,

Law Office of Patrick R. McKamey
Attorney for Defendant
515 North Flagler Drive
Suite P300
West Palm Beach, Florida
(561) 370-7424
patrick@mckameydefenselaw.com

By  */s/ Patrick R. McKamey*
   PATRICK R. MCKAMEY, ESQUIRE
   FLORIDA BAR NO. 103624

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September  22nd , 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

By  */s/ Patrick R. McKamey*
   PATRICK R. MCKAMEY, ESQUIRE